IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

GARLAND PITTMAN,                    :
                                    :
             Plaintiff,             :
                                    :
v.                                  :        Case No. 3:25-cv-85-TES-AGH
                                    :
OFC CLAYTON,                        :
                                    :
             Defendant.             :
_____     :

## ORDER AND RECOMMENDATION

Before the Court are Defendant's motion to dismiss (ECF No. 15) and Plaintiff's motion to appoint counsel (ECF No. 8). For the reasons stated below, it is recommended that Defendant's motion to dismiss be granted. Plaintiff's motion to appoint counsel is denied.

## BACKGROUND

Plaintiff claims that on August 10, 2023, he and another inmate began fighting in his cell at Macon State Prison ("MSP"). Compl. 5, ECF No. 1. Plaintiff then began beating on his cell door to notify Officer Clayton that Plaintiff needed assistance in his cell. *Id.* Officer Clayton came to Plaintiff's cell and saw that Plaintiff and his cellmate were fighting. *Id.* Rather than break up the fight, Officer Clayton left Plaintiff to continue fighting "for [his] life." *Id.* Plaintiff does not say how the fight ended, but he asserts that the cellmate "is now deceased." *Id.* Plaintiff further states in his complaint that he filed a grievance on October 10, 2023, at Valdosta State Prison ("VSP"), which is where he was moved after the incident

with his cellmate.    Compl. 3.    Plaintiff claims that he could not file the grievance at MSP because he was in a suicide cell, presumably until he moved to VSP.    *Id.*

Plaintiff moved for appointment of counsel on November 24, 2025 (ECF No. 8). Defendant Clayton then moved to dismiss Plaintiff's complaint for failure to exhaust his administrative remedies on February 5, 2026.    Def.'s Mot. to Dismiss 1, ECF No. 41.    On February 6, 2026, the Court notified Plaintiff of his right to respond and explained to Plaintiff that his failure to respond may result in the court accepting the statements in the motion as being uncontested.    Plaintiff failed to respond to the motion.    These motions are ripe for review.

## DISCUSSION

### I.    Motion to Appoint Counsel

Plaintiff moves for appointment of counsel in this case. [1]    ECF No. 8. "Appointment of counsel in a civil case is not a constitutional right."    *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990).    "A court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion."    *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citing *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)).    In determining whether a case presents extraordinary circumstances, the Court considers:

---

[1] The federal IFP statute authorizes courts to "request an attorney to represent any person unable to afford counsel."    28 U.S.C. § 1915(e)(1).    The statute does not, however, provide any funding to pay counsel for their representation or authorize courts to compel counsel to represent an indigent party in a civil action.    *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (stating that district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915 provides no such authority).

(1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination."   The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court considered Plaintiff's motion and—after applying the factors set forth above—concludes that the appointment of counsel is not justified.   Plaintiff has demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by the Court.   Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary.   *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999).   Plaintiff's motion for appointment of counsel (ECF Nos. 8) is consequently denied.

## II.   Defendant's Motion to Dismiss

### A.   Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm

suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015).

"Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (internal quotation marks omitted).

4

Further, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.* In resolving the factual dispute, a Court is authorized to make credibility determinations. *See Bryant*, 530 F.3d at 1377-78 (finding that district court did not clearly err in determining that plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court finding that one of inmate's grievances was not filed).

A prisoner need only exhaust administrative remedies that are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross*, the Supreme Court held that an administrative procedure is unavailable under the PLRA when either (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any

relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. For a remedy to be available, it "must be capable of use for the accomplishment of its purpose." *Turner*, 541 F.3d at 1084 (quotation marks omitted). The burden is on the defendant to show that an administrative remedy is available, but "once that burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (internal quotation marks omitted) (citing *Turner*, 541 F.3d at 1085). District courts must use the two-step *Turner* analysis when addressing the availability of the grievance process. *See Jenkins v. Sloan*, 826 F. App'x 833, 839 (11th Cir. 2020) (directing district courts to apply "the two-step Turner test when addressing the question of exhaustion and the *availability* of the grievance process").

B.    Grievance Procedures

To establish the grievance procedures in this case, Defendant submitted two declarations: (1) the declaration of Anna Walker, Grievance Coordinator at MSP, and (2) the declaration of Heather Davis, Grievance Coordinator at VSP. Walker Decl. ¶ 2, ECF No. 15-1; Davis Decl. ¶ 2, ECF No. 15-2. These declarations explain the grievance procedures available to Plaintiff at MSP and VSP. *See generally* Walker Decl.; Davis Decl. Walker and Davis's responsibilities include understanding and

ensuring compliance with the grievance procedures, coordinating investigations and responses to grievances, and maintaining grievance records.   Walker Decl. ¶ 2; Davis Decl. ¶ 2.   MSP and VSP follow the Georgia Department of Corrections ("GDC") Standard Operating Procedure 227.02 (the "SOP") regarding grievances.   Walker Decl. ¶ 3; Davis Decl. ¶ 3.

The SOP mandates that an inmate must follow a two-step process in order to exhaust his remedies: (1) file an original grievance no later than ten days from the date the inmate knew or should have known of the facts giving rise to the grievance; and (2) file an appeal to the Central Office.   Def.'s Attach. 1, at 8, 14, ECF No. 15-3.[2] Pursuant to the SOP, an inmate "may file a grievance about any condition, policy, procedure, or action or lack thereof that personally affects the Offender."   *Id.* at 4. After a grievance is filed, the grievance coordinator will screen the grievance and accept it for processing or recommend rejection of the grievance for one of the reasons enumerated in the SOP, including raising a non-grievable issue, untimeliness, or raising more than one issue.   *Id.* at 9.   A warden "should reject" a grievance "if it . . . [i]s not timely filed; however, the Grievance Coordinator may waive the time limit for Good Cause[.]"   *Id.*   The SOP defines "good cause" as "[a] legitimate reason involving unusual circumstances that prevented the Offender from timely filing a grievance. . . .   Examples include: serious illness, being housed away from a facility

---

[2] Both Walker and Davis's declarations include the same attachments.   Attachment 1 is a copy of the GDC SOP regarding grievances.   ECF No. 15-3.   Attachment 2 is a copy of Plaintiff's grievance history.   ECF No. 15-4.   Attachment 3 is a copy of Grievance No. 359220, and related records, in which Plaintiff's grieves the issues related to this complaint.   ECF No. 15-5.   Attachment 4 is Plaintiff's movement history.   ECF No. 15-6.   For ease of reference, the Court cites to these attachments as "Def.'s Attach." with the appropriate attachment number.

covered by this procedure (such as being out on a court production order or for medical treatment)."   *Id.* at 2.

The warden has forty calendar days from the date an offender submits a grievance to respond, though a one-time ten-day extension may be granted.   Def.'s Attach. 1, at 11.   An inmate may file an appeal within seven days after the warden issues a decision or after the time allowed for the warden to decide expires.   *Id.* at 14. An inmate may appeal a rejected grievance.   *Id.* at 10.   The Commissioner has one hundred and twenty days within which to respond to a grievance appeal.   *Id.* at 15.

C.      Plaintiff's Grievance

Walker and Davis provided a copy of Grievance Number 359220, which they identify as the grievance Plaintiff filed related to his allegations in this complaint. Walker Decl. ¶ 14; Davis Decl. ¶ 14; Def.'s Attach. 3, at 1, 7, ECF No. 15-5.   Plaintiff signed the grievance on October 9, 2023,[3] and it alleges that on August 10, 2023, Plaintiff had to "protect himself from a Muslim at [] Macon State Prison . . . after letting officers know that it would be problems due to past events [he] had with Muslims on the compound having to protect [him]self."   Def.'s Attach. 3, at 7.   He further states that he "notified Ofc. Clayton for help 2 days in a row."   *Id.*   Plaintiff's requested resolution is that the charges against him for felony murder for killing his cellmate be dropped because he was "wrongfully treated having to be forced to live with known Muslim after [he] was sent to segregation for an altercation with a

---

[3] It appears that the grievance was signed by Plaintiff on October 9, 2023, and submitted to prison officials on October 10, 2023.   Def.'s Attach. 3, at 7.

Muslim in which [he] had to fight in self defense[.]"  *Id.*

Grievance No. 359220 was received by MSP/VSP on October 10, 2023, and initially found to be untimely by Walker on October 17, 2023, at the investigation phase.  Walker Decl. ¶ 17; Def.'s Attach. 3, at 1.  It appears that that was submitted to the Warden of MSP who ultimately rejected the grievance as untimely on October 26, 2023.  Def.'s Attach. 3, at 1, 4-5.  Plaintiff was not notified of the grievance response until June 4, 2024.  *Id.*  Although Plaintiff was notified on the rejection notice that he could appeal the grievance rejection within seven days, Plaintiff did not appeal.  Walker Decl. ¶ 18; Davis Decl. ¶ 18; Def.'s Attach. 2.

    D.    Application of the Two-Step Turner Test

Defendant argues that Plaintiff failed to properly exhaust his administrative remedies in two ways.  First, he failed to timely file his grievance within ten days of the incident as required by the SOP.  Def.'s Mot. to Dismiss 9-10.  Second, he failed to appeal the grievance rejection.  *Id.*

Plaintiff failed to respond to the Motion to Dismiss, so the Court reviews the complaint to determine whether Plaintiff makes any argument regarding exhaustion. First, Plaintiff states that he filed a grievance out of time because he could not file the grievance at MSP due to being in a "strip cell" with "nothing but the clothes [he] had on 8-10-23."  Compl. 3.  Second, Plaintiff states that he appealed the grievance: "filed it to the highest level in which I could[,] [r]esponse from Cynthia Anderson on 11-8-23."  *Id.* at 4.  He further states that he appealed his grievance to the "highest of courts[] that [he] could."  *Id.*

9

The Court construes Plaintiff's statements as an argument that he properly exhausted the administrative procedures through the good-cause exception for late-filed grievances and that he then properly appealed his grievance. Plaintiff's allegations—assuming they are true—are sufficient to survive the first step of the *Turner* analysis. Therefore, the Court proceeds to the second step and makes the following factual findings.

A.   Plaintiff's Failure to Exhaust Under the SOP

The Court concludes that Plaintiff failed to properly exhaust his administrative remedies as required by the SOP. First, Plaintiff failed to file his grievance within ten days of the incident and instead waited two months before submitting his grievance. Def.'s Attach. 3, at 7. Plaintiff, however, claims he was prevented from timely filing his grievance because he was in segregation without materials to file the grievance. Compl. 3. The Court construes this as Plaintiff attempting to invoke the good-cause exception for an out-of-time grievance. But it appears from the record that Plaintiff did not invoke the good-cause exception on the grievance itself. Def.'s Attach. 3, at 7. At the bottom of the grievance form it states: "Is this grievance being filed within the 10-day time limit? Please answer Yes or No. If the answer is no, please explain why." Def.'s Attach. 1, at 20; Def.'s Attach. 3, at 7. Plaintiff did not explain why he filed the grievance late in the grievance itself. Def.'s Attach. 3, at 7. It is consequently unclear if the Warden considered whether the good-cause exception applied. Regardless, the Warden found Plaintiff's grievance to be untimely filed, and the Court cannot conclude the rejection was arbitrary since it

10

was filed two months after the alleged incident occurred and Plaintiff failed to make any argument regarding good cause in the grievance.

Second, assuming Plaintiff has shown good cause for why he could not have filed the grievance while at MSP, his grievance was still untimely filed. Plaintiff claims he could not timely file his grievance because he was in segregation without a way to file the grievance at MSP. Compl. 3. Plaintiff's movement history confirms that he was moved internally at MSP—presumably to segregation—on August 10, 2023. Def.'s Attach. 4, at 1, ECF 15-6. Plaintiff was then moved to VSP on September 26, 2026. *Id.*; Walker Decl. ¶ 17; Davis Decl. ¶ 17. At that point, any impediment to filing by being in segregation at MSP was removed and Plaintiff should have filed the grievance within ten days. But Plaintiff waited another thirteen days to file his grievance after arriving at VSP.

Third, even if Plaintiff did properly invoke the good-cause exception and his grievance was otherwise sufficient for exhaustion, he failed to appeal his grievance. Although Plaintiff states that he appealed the grievance, he says he appealed "to the highest of courts[] that [he] could." Compl. 4. He further states that he received a response for his appeal on November 8, 2023, from "Cynthia Anderson." *Id.* The record, however, shows that he did not receive a grievance response on his grievance until June 4, 2024, and that he did not thereafter file an appeal. Def.'s Attach. 3, at 1, 4-5. There is a reference to Cynthia Anderson on the grievance rejection form which states that she was emailed on November 8, 2023. *Id.* at 4-5. The Court does not have any information regarding who Cynthia Anderson is, but based on Plaintiff's

allegations, it appears that she may have informed Plaintiff that his grievance was rejected on November 8, 2023. The SOP does not contemplate an individual receiving early notice of a rejection, but Plaintiff could have appealed at that point (although it may have been rejected as early) or after the 40 calendar days elapsed from his filing of the grievance. Def.'s Attach. 1, at 14. Plaintiff also could have appealed within seven days after he received the grievance rejection in June 2024. But the evidence in the record shows that Plaintiff did not appeal his grievance rejection. Thus, the Court finds that Plaintiff failed to properly exhaust his administrative remedies under the SOP.

### B.    Plaintiff Had Available Administrative Remedies

The Court also concludes that Plaintiff had an available administrative remedy. While a defendant must "initially establish" that an administrative remedy was available to a plaintiff, the defendant is only required to show that a remedy was "generally available." *Wright*, 820 F. App'x at 845. A defendant need not show that "a remedy was available to [a plaintiff] practically speaking." *Id.* Once the defendant's burden is met, "the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter*, 974 F.3d at 1356 (internal quotation marks and citation omitted).

Here, Defendant has met his initial burden of establishing that an administrative remedy was generally available to Plaintiff. As observed by the Eleventh Circuit, "it is difficult to conceive of how a defendant could show that a

plaintiff failed to exhaust his remedies without showing that there was a remedy to be exhausted." *Wright*, 820 F. App'x at 845.   Defendant has shown the existence of remedies here through Walker and Davis's declarations outlining the grievance procedures utilized at MSP and VSP, Plaintiff's grievance history, and Plaintiff's use of the grievance procedures.   Walker Decl. ¶¶ 3-4, 13; Davis Decl. ¶¶ 3-4, 13; Def.'s Attach. 2, ECF No. 15-4; Def.'s Attach. 3, at 1, 7.

Therefore, the burden shifts to Plaintiff to show that the grievance procedures were "subjectively and objectively unavailable to him." *Geter*, 974 F.3d at 1356. Plaintiff states that he could not file a grievance while he was in segregation at MSP. Compl. 3.   Presumably, Plaintiff is invoking the third circumstance of unavailability outlined in *Ross* where inmates are prevented from exhausting their administrative grievances.   *Ross*, 578 U.S. at 643-44.   But Plaintiff's statement that he was unable to file because he "was placed on a strip cell (suicide cell) with nothing but the clothes I had on" is insufficient to meet his burden of showing unavailability.   He fails to provide any detail about how long he was in segregation or explain why he was unable to file a grievance in segregation.   The SOP requires that grievance forms be provided to individuals in segregation "upon request[.]"   Def.'s Attach. 1, at 3. Further, under the SOP, inmates may request assistance from "institutional staff" if an inmate "need[s] special help filling out the grievance forms[.]"   *Id.* at 4.   In short, Plaintiff's one unsupported statement fails to show that the grievance procedure was either subjectively or objectively unavailable to him.   Moreover, Plaintiff fails wholly to address how the grievance procedures were unavailable to him at VSP.   Thus, the

13

Court concludes that Plaintiff failed to meet his burden of showing that administrative remedies were unavailable.

## CONCLUSION

In summary, Plaintiff's motion for appointment of counsel (ECF No. 8) is denied. Further, the Court concludes that Plaintiff had available administrative remedies at MSP and VSP which he failed to properly exhaust. Accordingly, it is recommended that Defendant's motion to dismiss (ECF No. 15) be granted and that Plaintiff's complaint be dismissed for failure to exhaust his administrative remedies.[4] Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

---

[4] Dismissal for failure to exhaust is generally without prejudice, and that is what the Court is recommending here regarding Plaintiff's failure to exhaust. *See Garcia v. Obasi*, No. 21-12919, 2022 WL 669611, at *4 (11th Cir. Mar. 7, 2022) (citing *Bryant*, 530 F.3d at 1374-75 & n.12). Nevertheless, it is likely that the statute of limitations has expired in this case, and thus, dismissal without prejudice for failure to exhaust is effectively a dismissal with prejudice. *See Stephenson v. Warden, Doe*, 554 F. App'x 835, 837 (11th Cir. 2014) ("[W]here a dismissal without prejudice has the effect of precluding the plaintiff from re-filing his claim due to the running of the statute of limitations, it is tantamount to a dismissal with prejudice." (citing *Justice v. United States*, 6 F.3d 1474, 1482 & n.15 (11th Cir. 1993))); *see also Massengale v. Ford*, No. 5:17-CV-99-MTT, 2019 WL 728971, at *1 n.1 (M.D. Ga. Feb. 20, 2019) (noting that even if the dismissal for failure to exhaust was effectively with prejudice, dismissal was "nonetheless appropriate because the Plaintiff had ample opportunity to exhaust his administrative remedies before filing suit but failed to do so").

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.   In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 13th day of July, 2026.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE